ROBERT L. DAY et al., Respondents, *v*. THE OGDENSBURGH AND LAKE CHAMPLAIN RAILROAD COMPANY, Appellant, and others.

In this State and in Vermont a railroad corporation by omitting to perform a duty imposed upon it by its charter does not, *ipso facto*, and, in the absence of words in the charter making such non-compliance a limitation upon the original grant of power, lose its corporate character; to dissolve the corporation there must be a judicial proceeding and judgment declaring the forfeiture.

Where a railroad corporation is authorized to lease the roads of other similar corporations it may, in the absence of any statutory limitation, lease a road operated in and under the laws of another State unless the law of

A corporation organized under the General Railroad Act has power under the act of 1839 (Chap. 218, Laws of 1839), to contract "with any other railroad corporation" for the use of its road in any manner not "inconsistent with the provision of the charter" of such other corporation.

By act of the legislature of Vermont, passed in October, 1872, the L. V. E. R. R. Co., was created to build a railroad between points specified. The act declared that: "If said corporation shall not within ten years from the approval of this act commence the construction of said railroad then said corporation shall be dissolved." The road was not constructed within ten years, but was thereafter built under an agreement between said corporation, the defendant, the O. & L. C. R. R. Co., and other parties, and was leased to defendant. In an action by holders of certain bonds issued by defendant among other things, to restrain it from carrying out the provisions of the lease, on the ground, among others, that the L. V. E. R. R. Co., by its omission to commence the construction of its road within the time prescribed, lost power to do a corporate act and its existence ended, *held*, that non-compliance with the requirement did not of itself work a dissolution of the corporation.

*In re B. W. & N. R. Co.* (72 N. Y. 245); *S. C.* (75 N. Y. 335); *B. S. T. Co.* v. *City of B.* (78 N. Y. 525) distinguished.

It was provided in and by the said agreement that the L. V. E. R. R. Co., should issue so many of its first mortgage bonds, not exceeding a sum specified, as should be sufficient to construct its road; that these should be purchased by the parties to the agreement, other than the two corporations, and defendant agreed when the road was completed to take a lease of it on terms and conditions specified ; after the completion of the road a lease was executed as agreed. By the terms of the lease defendant agreed to equip, maintain and operate the demised road as a part of its line, to pay taxes assessed thereon and certain other expenses, and to pay at maturity the principal and interest of the bonds; also, that the whole gross earnings of the demised road should be used and applied, first, to pay the interest accruing, and second, for the creation of a sinking fund for the payment of the principal of the bonds. *Held*, that the agreement and lease were within the power of the two corporations to make and were valid.

The bonds held by plaintiffs were "income mortgage bonds" issued by defendant under a special act passed in 1880 (Chap. 73, Laws of 1880). Only the principal of these bonds was secured by the mortgage, the payment of interest was subject to the condition that "the net earnings of the railroad and other property of the company for each period," *i. e.*, each year, should be sufficient to pay it; the amount of net earnings for each period to be determined by defendant's board of directors, by the coupons, the company promised to pay the sum named, "or so much thereof as its net earnings for the year then ending, according to the terms of the bond, will pay." The property mortgaged included all the prop-

erty, franchise, income and profits, and all "privileges, rights," etc., and all rolling stock and other property "now owned, or hereafter to be owned, or acquired by said company." By the terms of the mortgage it was made subject to the right of the mortgagor "to retain the free and uncontrolled use, enjoyment, possession and management" of the mortgaged property, so long as no default was made in payment, in accordance with the terms of the bonds. The mortgage stated that it was given primarily to secure certain bonds described as "first consolidated mortgage bonds of the company," and secondarily the payment of the principal but not the interest of the "income mortgage bonds." It was also further provided that whenever the mortgagor acquired any franchises, or "property or interests of any name or nature, for the use of or in connection with its railroad," they should be held subject to the lien of the mortgage. It was claimed on behalf of plaintiffs that the income of defendant was charged with the payment of plaintiffs' bonds and could not be applied upon any contract subsequently entered into until the charge was extinguished; that the net earnings were insufficient to meet the accruing interest on the income bonds, and if diverted for the purpose of carrying out the lease would be absorbed. *Held,* that, so far as the interest was concerned, plaintiffs were simply contract creditors, having no lien, or right other than to have it paid out of the proper fund, *i. e.,* "the net earnings;" that the power of the company to change the condition of the road by additions, extensions, or improvements consistent with the purposes of its incorporation, was not restricted by the provisions referred to; that the parties contemplated a line of active and efficient railroad, managed in the usual manner according to the discretion of defendant's directors, not one in suspense or liquidation; and that, therefore, the directors had the right to use the earnings of the corporation for such improvements or other lawful purposes in its business as they might think best, and plaintiffs were not entitled to maintain the action.

(Argued June 23, 1887; decided October 11, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 2, 1886, which affirmed an interlocutory judgment in favor of plaintiffs, entered upon an order overruling a demurrer to plaintiffs' complaint.

This action was brought by plaintiffs, as owners of certain bonds issued by defendant, the Ogdensburgh and Lake Champlain Railroad Company, known as "income mortgage bonds," on their own behalf and that of owners of other like bonds to restrain said defendant from using its net earnings for the

purpose of carrying out the terms of a lease executed to it by the Lamoile Valley Extension Railroad Company, by paying bonds issued by that company and for an accounting for moneys already so paid.

The material facts stated in the complaint are set forth in the opinion.

*Denis O'Brien, D. G. Griffin* and *Louis Hasbrouck* for appellant. The lease is within the powers of the contracting corporations. (Vt. R. S. § 3303; 34 Vt. 1; Story on Conf. of Laws [8th ed.], 175, § 106, note *a*.) The Laws of 1839, chapter 218, confer power upon railroad corporations, not only to acquire, but also to transfer to other railroad corporations by lease, the exclusive right to use and enjoy the property and privileges of the lessor in such contract. (*Woodruff* v. *Erie R. Co.*, 93 N. Y. 609–616; 46 id. 644; 54 How. Pr. 183; 35 Hun, 226; Abb's Pr. [N. S.] 16, 249; 4 Hun, 268, 712; 63 N. Y. 176; *Arnot* v. *E. R. Co.*, 5 Hun, 608; *In re N. Y. L. & W. R. R. Co.*, 35 Hun, 220; 99 N. Y. 12; 93 id. 615; *Stewart* v. *L. V. R. R. Co.*, 38 N. J. 505; *Sturges* v. *Knapp*, 31 Vt. 1; 33 id. 486; 36 id. 439; *In re Staten Island R. R. Co.*, 103 N. Y., 251; *Penn. Co.* v. *St. L. & T. Co.*, 118 U. S. 290; *P. & C. R. R. Co.* v. *C. & C. Co.*, 8 Biss. C. Ct. 456.) The assent of the stockholders of respective companies to the lease, was not necessary. (2 Redf. on R'ys, 112.) To the agreement under consideration, no single corporator of either company having ever been heard to object, and the agreement having been performed by the execution of the lease, it has been perfectly ratified and validated as against the corporators and the companies themselves; much more so as against strangers to the corporation like the plaintiffs, who were never qualified to raise the question. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546.) The preliminary agreement and the lease are not in effect an undertaking by the Ogdensburg and Lake Champlain Railroad Company, to furnish funds to build a road in Vermont. (*T. & C. R. R. Co.* v. *Spencer*, 42 Hun, 496; *Weterhane* v. *N. C. & S. L. R. R. Co.*, 4 N. Y. 541; *V. & C. R. Co.* v. *V. C. R.*

*Co.*, 34 Vt. 1; *Durfee* v. *Old C. R. R. Co.*, 5 Allen [Mass.], 230; *Stewart* v. *L. I. R. R. Co.*, 102 N. Y. 601.) The alleged omission of the Lamoile Valley Extension Company to begin the construction of its road within ten years did not affect a dissolution of the corporation. (Angel & Ames on Corp. § 777; *People* v. *Manhattan Co. Bk.*, 9 Wend. 351; *In re Newtown R. Co.*, 72 N. Y. 245; 75 id. 335; *Brooklyn S. T. Co.* v. *City of Brooklyn*, 78 id. 529; *Vt. & C. R. R. Co.* v. *C. V. R. R. Co.*, 34 Vt. 55.) The lease does not provide for a violation of the provisions of the income bonds of the Ogdensburg & Lake Champlain Railroad Company. (Jones on Ry. Secur. §§ 114–120, 316; *Gal. R. R. Co.* v. *Cowdrey*, 11 Wall. 459, 482, 483; Wood on Railroads, § 464, note 6; *Dow* v. *R. R. Co.*, 20 Fed. Rep. 768; *Gilman* v. *Ill. & Miss. Tel. Co.*, 91 U S. 617; 94 U. S. 798; 107 Mass. 1; *St. John* v. *E. R. Co.*, 22 Wall. 136.) The rents for the year accruing under leases taken by the company after the issuing of the preferred stock were properly paid. (*Warren* v. *King*, 108 U. S. 389; *Perkins* v. *Depford P. Co.*, 18 Simmons, 277; *Nickerson* v. *Erie Ry. Co.*, 119 U. S. 296; *Middletown* v. *B. V. & R. R. Co.*, 53 Conn. 351; *Doherty* v. *Allman*, 3 App. Cas. 709.) An agreement either in parol or in writing, to pay a debt out of a designated fund does not give an equitable lien upon the fund or operate as an equitable assignment thereon. (*Christmass* v. *Russell*, 14 Wall. 69; *Trist* v. *Child*, 21 id. 441; *Conselyea* v. *Drew*, 24 Week. Dig. 581; *Dillon* v. *Bernard*, 21 Wall. 430; 1 Barb. 454; 89 N. Y. 512; 16 B. Reg. 448.) The plaintiffs are estopped from questioning the validity of the lease. (*C. & A. R. R. Co.* v. *Mays, L. & E. H. R. R. Co.*, 7 At. Rep. 523.) The plaintiffs are not qualified to sue for a redress of the alleged *ultra vires* act of the Lamoile Valley Extension Company. (Green Brice's *Ultra Vires*, 693; *Haight* v. *N. Y. El. R. Co.*, 49 How. Pr. 20.) The plaintiffs are not qualified to sue for the redress of the alleged *ultra vires* acts of the Ogdensburg and Lake Champlain Company. (Green Brice's *Ultra Vires*, 648–652; *Hills* v. *N. R. R. Co. of*

*Beunos Ayres*, 5 Ch. App. C. 621; *U. S.* v. *U. P. R. Co.*, 98 U. S. 569–614; *Smith* v. *R. R. Co.*, 99 id. 398; *Van Wiel* v. *Winston*, 115 id. 245; *Bewley* v. *Eq. L. As. Co.*, 61 How. Pr. 344; *Adee* v. *Bigler*, 81 N. Y. 349.) The bill for an injunction cannot be maintained, because the complainants have an adequate remedy at law. (*Bates* v. *And. R. R. Co.*, 49 Me. 491; *Marlor* v. *T. & Pac. Ry. Co.*, 17 Am. & Eng. Ry. C. 257; *Mills* v. *N. R. R. Co.*, L. R., 5 Ch. App. C. 261.) The plaintiffs, even if they were qualified as creditors of the corporation to maintain an action for damages or for an accounting, do not show their performances of the necessary conditions to authorize its institution. (*Memphis City* v. *Dean*, 8 Wall. 73; *Hawes* v. *Oakland*, 14 Otto, 461; *Baker* v. *N. Y. & L. E. R. R. Co.*, 96 N. Y. 444; 69 id. 154.)

*Edward C. James* and *A. R. Herriman* for respondents. In the ordinary case of a mortgage, given by a railroad company to secure the payment of the principal and interest of a regular issue of bonds upon all the property of a company, including its income, the whole earnings belong to the company and are subject to its control, the same as the other mortgaged property, until possession is taken by a receiver, or something equivalent is done to restrain the debtor company (*Galveston R. R. Co.* v. *Cowdrey*, 11 Wall. 459; *Gilman* v. *I. & M. T. Co.*, 91 U. S. 603; *Am. Bridge Co.* v. *Heidelbach*, 94 id. 798; *Fosdick* v. *Schall*, 99 id. 235, 253; Jones on R. R. §§ 114–120); but it is competent for the parties to agree that future net earnings and profits shall be held in equity for the mortgagee; and, under such a contract, such income, whenever received, is operated upon by the mortgage, and the party receiving it holds it in trust for whoever is entitled to it. (*Pullan* v. *C., etc., R. R. Co.*, 5 Biss. 237; *Bucks* v. *M. & L. R. R. Co.*, 4 Cent. L. J. 430.) No particular form of words is necessary to create an equitable lien upon or assignment of a fund, but all the circumstances of the transaction are to be considered. (*Williams* v. *Ingersoll*, 89 N. Y. 508, 521.) Where it is agreed by a railroad company that all its

current net earnings and income, after deducting current expenses and needful expenditures for maintaining and operating its railroad and equipments, shall be applied and used for the payment of interest upon its bonds, this amounts in equity to a specific appropriation, and gives to the bondholders an equitable lien upon the income of the company. (*Barry* v. *M. K. & T. R. Co.*, 27 Fed. R. 1 ; *Ketchum* v. *St. Louis*, 101 U. S. 306 ; *Rutten* v. *U. P. Ry. Co.*, 17 Fed. R. 480 ; *Park* v. *Grant L. Works*, 2 Cent. R. 185 ; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157.)   The income bondholders are entitled to the payment of interest upon their bonds, out of the net income of the debtor company in preference to payments other than those specified in their bonds. (*Barry* v. *M. K. & T. R. Co.*, 27 Fed. R. 1, 7, 8 ; *Williams* v. *Ingersoll*, 89 N. Y. 508–581 ; *Ketchum* v. *St. Louis*, 101 U. S. 303 ; *Rutten* v. *U. P. R. Co.*, 17 Fed. R. 480 ; *Park* v. *Grant L. Works*, 2 Cent. R. 185 ; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 158.)   The payment of interest upon the bonds of the Lamoile Valley Extension Railroad Company and of a sum of money annually into a sinking fund to redeem said bonds, under said agreement and lease, are not purposes to which the income of the Ogdensburg Company can be appropriated as between the Ogdensburg Company and its income bondholders.   No such application of said income was either authorized or contemplated. (*Barry* v. *M. K. & T. R. Co.* 27 Fed. R. 1 ; *U. P. R. R. Co.* v. *U. S.*, 99 *U. S.* 420.) The agreement and lease are *ultra vires*. (*T. & B. R. R. Co.* v. *B. H. T. & W. R. Co.*, 86 N. Y. 107, 117; *Thomas* v. *R. R. Co.*, 101 U. S. 71 ; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609, 616; *People* v. *A. & V. R. R. Co.*, 77 id. 232 ; *Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 id. 644 ; *Fisher* v. *Met. El. R. R. Co.*, 34 Hun, 433 ; *In re N. Y., L. & W. R. R. Co.*, 35, id. 220, 227 ; *O. & L. C. R. R. Co.* v. *V. & C. R. R. Co.*, 16 Abb. [N. S.] 249, 260 ; *Penn. R. Co.* v. *St. L. A. & T. H. R. R. Co.*, 6 Sup. Ct. R. 1094.)   The plaintiffs are in a position to assert the *ultra vires* character of the agreements. (Brice's *Ultra Vires*, 511.)   It is not lawful for a railroad

company to use any of its funds in the purchase of any stock of its own or in any other corporation. (Laws of 1850, chap. 140, § 8; R. S. [8th ed.] 1530, 1531; *Milbank* v. *N Y., L. E. & W. R. R. Co.*, 64 How. Pr. 20, 24.) The construction of the railroad not having been commenced within ten years from the approval of the act of incorporation, its corporate existence thereby became extinct, and its power to make any contracts for the construction of its railroad ceased. (*In re B. W. & N. R. R. Co.*, 72 N. Y. 245; 75 id. 335; *Brooklyn S. T. Co.* v. *Brooklyn*, 78 id. 524.)

DANFORTH, J. The plaintiffs object, *first*, that certain acts of the defendant, the Ogdensburg & Lake Champlain Railroad Company, done and threatened, are in excess of its powers and illegal; *second*, that if otherwise valid the defendant has so bound itself by contract that the appropriation of its earnings to carry out those acts is a breach of that contract. So far they have succeeded. Interlocutory judgment was given in their favor at Special Term and affirmed at General Term. The questions submitted to the court were raised by demurrer to the complaint, and this appeal involves an inquiry as to whether the allegations of that pleading are sufficient to constitute a cause of action.

The defendant, appellant here, is a railroad corporation organized and incorporated under and in pursuance of the laws of the State of New York. As such, it owned and operated a line of railroad from Ogdensburg to Rouse's Point, in this State, and in the year 1880 was authorized by a special act of the legislature (Laws of 1880, chap. 73) to issue bonds in such form, and payable at such time as its directors might determine, and secure the whole or any part of said bonds by a mortgage upon its franchise, railroad and other property, both real and personal. Prior to this time, in October, 1872, the legislature of the State of Vermont created a railroad corporation under the name of " The Lamoile Valley Extension Railroad Company," to build a railroad from " some point in the towns of Swanton and Alburgh to the north line of

this State, in the town of Alburgh, with the right to build and maintain a bridge with a suitable and convenient draw for the passage of vessels, from some convenient point at or near the eastern shore of the Missisquoi Bay, in the town of Swanton, to some point at or near the western shore of Missisquoi bay, in the town of Alburgh," a distance of about twelve miles. The act also provides that its directors may at any time make such alterations in the route or location of said road as they may deem necessary or expedient, and also that the corporation "may contract with the managers of any railroad company to perform all transportation of persons and property upon and over said road, and may lease their said road, and do such other things as may be necessary to build and run said road." But declares that "if said corporation shall not, within ten years from the approval of this act, commence the construction of said railroad, then said corporation shall be dissolved."

Ten years and more elapsed after the charter was approved, and the construction of the road had not been commenced, but on the 2d of February, 1883, the Lamoile Valley Extension Company entered into an agreement with Vanderbilt and Phelps and the defendant, the Ogdensburg & Lake Champlain Railroad Company, by which, after reciting that with a view to establish all rail routes for traffic and passengers between the west and northern New England, and to form necessary connections to carry the same into effect, a new railroad must be constructed from Rouses Point to Maquam Bay or Swanton, in the State of Vermont, and the railroad companies above named deem it for their interests to have such railroad constructed, and such connections made, the Lamoile Valley Extension Company agreed to issue so many first mortgage bonds, not exceeding $350,000, as should be sufficient to construct the road and bridges. Vanderbilt and Phelps agreed to purchase them for that purpose, and the Ogdensburg & Lake Champlain Railroad Company agreed that when the road should be completed it would take a lease

of it in perpetuity in the form and on the conditions then agreed upon. Subsequently the road was built, and on the 31st of December, 1883, an agreement was made between the Lamoile Valley Extension Company, of the first part, and the Ogdensburg & Lake Champlain Railroad Company, of the second part, by which the former leased to the other its railroad, "together with all the lands on which said railroad is constructed, including all the lands acquired, held and owned by the parties of the first part for roadway, station, and all other purposes of their incorporation, and all the rights, easements, franchises and privileges in connection therewith, or which are appurtenant thereto, and all the superstructure of said railroad, of whatever name or nature, and all the buildings, bridges, wharves, docks and piers and structures of whatever name or nature, pertaining to said railroad, and the land and premises on which the same are standing, and all the rights, privileges and franchise of the said parties of the first part, now possessed by them, including their right to construct, maintain and operate said railroad, and all the rights, privileges and franchises which the said parties of the first part may hereafter lawfully have, obtain and exercise. To have and to hold the same from the date thereof in perpetuity."

The defendant, the Ogdensburg & Lake Champlain Railroad Company, on its part agreed to equip, maintain and operate the demised railroad as a part of its line, and to keep it, "its bridges," etc., in good order; to pay taxes assessed upon it, and certain other expenses; to pay also the interest and principal at maturity of the bonds issued to Vanderbilt and Phelps under the agreement of February 2, 1883; and, further, "that the whole of the annual gross earnings of the demised railroad shall be annually applied and used, first, to the payment of the interest upon said bonds as the same becomes payable; and, second, to the creation of and payment into a sinking fund for the gradual redemption of and payment of the principal of said bonds, of which sinking fund the Ogdensburg & Lake Champlain Railroad Company were made the trustees, and an amount of said bonds equal to one-

fiftieth part of the whole amount thereof shall annually * * * be canceled, it being understood, however, that whether said gross earnings are adequate to these purposes or not, the parties of the second part are to pay semi-annually the interest on said bonds as the same becomes due, and annually obtain and cancel one-fiftieth part of the whole amount of said bonds."

The learned counsel for the respondents contend that, by reason of the omission of the Lamoile Valley Extension Company to commence the construction of its road within the time prescribed by the charter, its existence ended and left it without power to do a corporate act. The language of the act is that in such event " said corporation shall be dissolved." In this State it is well settled that under a similar statute dissolution is not effected by a mere failure to perform the condition, nor without judicial proceeding and judgment. The cases cited for the appellant (*Matter of B. W. & N. R. Co.*, 72 N. Y. 245; 75 id. 335; *Brooklyn S. T. Co.* v. *Brooklyn*, 78 id. 525) are easily distinguishable from the case at bar. The statute before the court in those cases provided, in express terms, that if the railroad company in question failed to finish its road within a time specified, " its corporate existence and powers shall cease." It was held that the statute executed itself, and that non-compliance with the condition extinguished the corporation in question by virtue of an express limitation upon the original grant of corporate power. But the general principle was recognized that, in the absence of such or like language, a corporation, by omitting to perform a duty imposed by its charter, or to comply with its provisions, does not, *ipso facto*, lose its corporate character. It does not appear that any different effect is given to such a statute by the courts of Vermont; but, on the contrary, in *Vermont & Canada Railroad Company* v. *Vermont Central Railroad Company* (34 Vt. 2), the Supreme Court of that State say it is beyond question that, unless the legislature undertake to declare a forfeiture upon facts that have already occurred, it appertains to the judicial department of the gov-

ernment to determine whether such forfeiture has been incurred. So far, therefore, the courts agree.

It is next argued for the respondents that the arrangement expressed through these instruments, so far as the Ogdensburg & Lake Champlain Railroad Company is concerned, is beyond the capacity and power of that corporation. We have seen that the Vermont Railroad Company had corporate powers, and among those expressly given by its charter is a power to lease its road. It had, therefore, contracting capacity, and was a good party to deal with. The Ogdensburg & Lake Champlain Railroad, on its part, lacked no power expressly given by statute to similar corporations in this State, nor any which, as incident and necessary thereto, might enable it to carry on the objects of the incorporation. Among other statutes to which it might appeal was one " authorizing rail road companies to contract with each other." (Laws of 1839, chap. 218.) Under this act it might lawfully agree " with any other railroad corporation " for the use of its road in any manner not " inconsistent with the provisions of the charter of the corporation whose railroad is to be used under such contract." The contract in question is not affected by the limitation expressed in the act, and unless we are to imply into it another restriction and say that its operation must be confined to contracts with roads operating in and under the laws of this State, the lease must be held valid between the parties. We see no reason for such restriction, nor any principle of public law which requires it. We are not at liberty to create it. It would be legislation, not construction. A corporation given capacity to contract may exercise that capacity with any party in or outside the limits of the State, unless the law making power of that other State forbids. (*Bank of Augusta* v. *Earle*, 13 Peters, 519). Our own statutes and the interpretation given to them by the courts are to that effect. (*Woodruff* v. *Erie R. Co.* 93 N. Y. 609; *In re N. Y. L. & W. R. R. Co.* 99 id. 12; *In re Peter Townsend* 39 id. 171; *In re Staten Island Rapid Tr. Co.* 103 id. 251.) In this case there is no such prohibition. Nor do we find that the defend-

Opinion of the Court, per DANFORTH, J.

ant has hired or that the lease covers an incomplete road.   It was indeed finished in performance of an agreement entered into at the same time the lease was bargained for, but the parties intended only a completed road, and before the lease was executed the road was completed.   It was thought to be a wise exercise of the power conferred upon its directors in the management of its affairs.   Its object, to secure a continuous road with connections necessary to extend its business and so accommodate freightors and passengers, and at the same time add to its receipts, is opposed to no principle of public policy.   There is no suggestion that it was fraudulently made, nor but that the terms are reasonable, agreed upon in good faith and in the honest belief that the interests of the corporation would by it be promoted.   We think the agreement was not beyond the power of the corporations to make ; that the lessor was able and not restrained to make the lease ; that the lessee was capable, and not disabled, to receive the thing demised, and, therefore, as between the parties that the lease was valid.   The payment of interest upon the bonds issued by the Lamoile company, and the annual payment of a portion of the principal of those bonds was, by way of rent, merely for the use of the road, and the privileges procured through the lease.   If the lease was valid, whether the lessor paid the rent in money, or its own bonds or promises, or by discharging an obligation of the lessee could make no difference.   In either way it obtained credit in connection with its business.   There was a choice of means to effect a lawful purpose, and it was within the discretion of the contracting parties to adopt one rather than the other as a part of the transaction.

We are next to consider the relation of the parties and their respective rights as defined by contract.   So far as presented in this action they depend upon the true construction of the terms of the income bonds above referred to, and part of which are held and owned by the plaintiffs.   Their claim is that the defendant has no other source " or property than its own earnings " to meet the obligations incurred to the Lamoile

company; that these earnings are insufficient to meet the accruing interest upon the income bonds, and if diverted to the discharge of the new indebtedness will be absorbed thereby, and so they allege that in carrying out the terms of the lease and paying the rent reserved the defendant is diverting money or revenue to which they are entitled under the bonds. The plaintiffs' case is put and must stand, if at all, upon the terms of the bond and upon nothing else. What those are will now appear. The complaint shows that in pursuance of the act of 1880 (*supra*) the company executed its mortgage to trustees, reciting therein its determination to issue two classes of bonds, one to be known as "the first consolidated mortgage bonds," not to exceed in amount $3,500,000, and the other as "income mortgage bonds," not to exceed in amount $1,000,000, all payable in forty years from the 1st of April, 1880, with interest on the first class half yearly, and on the second or income bonds, annually, payment of both principal and interest of the first class, but only the principal of the second class to be secured by mortgage. The promise to pay interest upon the latter class is subject to the condition that "the net earnings of the railroad and other property of the company for each period, after satisfying the expenses of operating and maintaining the same, with all taxes, assessments and floating indebtedness, and the interest on all liens, charges, incumbrances and other indebtedness (but not meaning thereby any dividends on the preferred stock of said company) on the property of or owned by said company shall respectively suffice to pay such rate of interest on all of this issue of bonds then outstanding, at the specified dates following each of said periods, or such interest less than six per centum per annum as such net earnings during such periods shall be sufficient to pay upon all said bonds then outstanding, each of the same being entitled to a ratable share thereof, and provided that the interest warrant or coupon of that date, and also all such warrants or coupons which shall have previously matured, be presented and surrendered as aforesaid."

The bond also declares that it is "covenanted and agreed by

and between the said company and the present and future holders of the bond and the interest warrants or coupons thereto annexed, that the words "net earnings" in this bond, and in each of said warrants or coupons, signify the amount remaining of the income of said company from its railroad and other property during each such period after satisfying and discharging all the expenses, interest and other charges aforesaid, and that the board of directors of said company shall determine the amount of such net earnings in each of such periods as aforesaid."

The coupon contains the same condition expressed in fewer words and is a promise on the part of the company to pay the sum named, "or so much thereof as its net earnings for the year then ending according to the terms of the bond will pay." The property mortgaged includes the railroad of the company and all its branches, "together with the franchise of the company, of operating and carrying on the same, * * * and all income and profits, and all * * * privileges, rights and real estate * * * now owned by said company, or which may be hereafter owned or acquired by it," with an exception not material here, together with all its rolling stock, "and other property now owned or hereafter to be owned or acquired by said company, and in any way belonging or appertaining to the said railroad of said company." By the terms of the mortgage it is subject to the right of the railroad company, its successor or assigns to retain the free and uncontrolled use, enjoyment, possession and management of the premises, rights and property granted or intended so to be, so long as it shall pay the principal and interest of said first consolidated mortgage bonds and the principal of said income mortgage bonds according to their terms, and shall keep its covenants and agreements in this deed or mortgage contained. So also the condition which, when performed is to annul and make void the mortgage, is in terms the payment of the first class of bonds, both principal and interest, and the principal only of the second class or income mortgage bonds. These things are restated by an express

covenant and agreement between the parties to the mortgage " for themselves and their successors and assigns, and for all parties who shall become interested as holders or owners of the bonds in manner following, that is to say : *First.* That this mortgage is given to secure, primarily, the payment of the principal and interest of said first consolidated mortgage bonds of said party of the first part ; and, secondarily, after the payment in full of said first consolidated mortgage bonds and the then accrued interest thereon, the payment of the principal (but not the interest thereon) of said income mortgage bonds." *Second.* " That the company will pay at maturity the principal and, as it accrues, the interest of the first consolidated mortgage bonds and the principal of the income bonds." In other respects the same care is exercised in distinguishing between the two classes of bonds and the rights of the holders of interest coupons attached thereto, and when at last provision is made for the distribution of proceeds arising from a forced sale under the mortgage it is directed to be paid, first, upon expenses, etc. ; second, upon the interest due on the first class of bonds, then upon the principal of those bonds; and lastly, if any part remains, upon the principal of' the income bonds, making no mention of the interest on those bonds, and so marked is this line of exclusion that contemplating the possibility that something might be left after meeting claims thus enumerated, it provides that if any surplus remains it shall be paid over, not to the holder of interest coupons of the income bonds, but to the mortgagor.

The mortgage also provides : " That whenever and as often as the company, its successors or assigns, shall acquire any franchises, lands, equipment or other property, or interest of any name or nature, for the use of, or in connection with its railroad, or for the purpose of its incorporation, it shall be held subject to the lien and trusts of the mortgage, and further mortgage or assurance shall be given upon it if requested."

There are no other provisions bearing upon the proposition before us ; and upon those the plaintiffs' position is, that the

income of the defendant, as that phrase is defined in the mortgage from which we have quoted, is charged with the payment of the plaintiffs' bonds, and is not applicable to any contract subsequently entered into until that charge is extinguished. The defendant's contention is that, notwithstanding the terms of the bond and mortgage, its income may be applied to the extension of its road, or to the promotion of any undertaking within the line of its corporate powers, and which, in the judgment of its directors, acting in good faith, will be for the advantage of the company and promote its interests, although such application should so diminish, or even altogether absorb, the fund that no part would remain for payment upon the interest of the income bonds.

The statute declares that every corporation organized as the defendant was, under the act of 1850 (Chap. 140, § 5), shall have a board of directors to manage its affairs; and it must follow that, so long as no provision of law is violated, they are subject to no other supervision than that of the legislature. The plaintiffs, so far as any claim is now involved, are simply contract creditors having a debt against the corporation, but no lien by mortgage, and with no other right than to have it paid out of the proper fund, viz., "its net earnings," the amount of which is to be determined by its board of directors at the expiration of each interest period; and such is the effect and the language of the agreement between the parties that if at one time there should be found a deficiency of income, and at another a surplus of income, the surplus cannot be applied to make up the deficiency then existing, nor reserved to apply upon a subsequent deficiency. Each interest period stands by itself, and the earnings of one period cannot be applied upon any interest coupon except the one for that period. They are not cumulative, and the inquiry at any given period must be whether earnings have accrued during the particular year for which they are demanded; and as the amount is to be determined at specified times and by the directors, so the parties, as we have seen, agreed upon the elements from which such determina-

tion should be made. It is not the whole income, but so much as remains of the income of the company after satisfying the expenses of operating and maintaining the road, with all taxes, assessments and floating indebtedness, and the interest on all liens, charges, incumbrances and other indebtedness * * * on the property of or owned by said company. This is, at most, an agreement to pay dividends if dividends are earned.

The contention of the learned counsel for the respondents and the effect of the judgment below is that the power of the company to change the condition of the road, although by additions or extensions and improvements consistent with the purposes of its incorporation, is limited and restrained by these provisions. It does not seem probable that such was the intention of the parties. The bonds are to run forty years. The earnings are to be determined at the end of each year. Did the parties suppose that in the meantime the road was to be stationary, or that the developments which time and the competition of new roads, or a demand for greater facilities would require, should be applied only to the road as it existed at the time of the mortgage. When they speak of the expenses of operating and maintaining the road, do they mean the road as it was in 1880? Was it supposed that no changes were to be provided for within the forty years? If so, for what purpose was the agreement made and put into the mortgage that if, and whenever, and as the company should in any manner acquire any franchises, of any nature or description, lands, or other property for the use of its railroad, or in connection with its railroad, they should be held subject to the lien and trusts of the mortgage or other conveyance made, if necessary to convey them to the trustees. Such is the agreement and from that it is plain the parties had in view the prospective wants of the railroad. They must be deemed to have understood that those wants would be supplied in the usual manner; if, upon credit, that an indebtedness would be created, and, if for cash, that both the indebtedness contracted and the cash paid must come either from the earnings of the company or

a sale of its property. In either event it would reduce the income provided for, but at the same time add a new source of income of which the bondholder would have the benefit. In short a fair and just construction of the agreement as expressed in the bond, requires us to hold that the parties contemplated a line of active and efficient railroad, and not a line of road in suspense or liquidation. In other words they provided for a road to be managed in the usual manner according to the discretion and judgment of its directors. Changes so occasioned might at one time diminish and at another increase the net earnings of the road. The operating expenses would be constantly liable to change. Uniformity is not bargained for nor promised. If that was intended it is difficult to see why the bond or mortgage did not provide that the operations of the company during the forty years of credit should be confined to the running of its road between the then termini, instead of providing for the acquisition of new franchises and the subjection of them to the lien of the mortgage. Nothing is said against making the road more useful by improvements or by new tracks, terminal facilities, elevators, leased roads or otherwise, although at an increased expenditure. The implication from the terms used is quite the other way. Nor do I find anything in the provisions regulating the rights of the parties which sustains in any manner the contention denying the power of the directors to use the earnings of the corporation for such improvements or other lawful purposes in its business as they may think best.

I have already given at length the phrases of the bond and mortgage on which reliance is placed, and it is obvious that there are none which in terms declare such prohibition; nor do I think that the construction contended for is warranted by the words actually used, and that, in acceding to that construction, the court below has inserted by implication that which the parties have not expressed, and which, in view of the precise language employed, they seem to have intentionally avoided.

It is not alleged that any portion of the earnings actually

remain in the hands of the company beyond a sum sufficient to discharge obligations due from it, but that there would have been, and will yet be, a sum of money to be applied upon the income bonds, provided the payments already made upon the lease are canceled and no others provided for. That is not to the point. As the lease is valid and within the powers of the company, and the company entitled to receive all the earnings, they must be applied in the discretion of the directors, and the payments already made must stand.

If these views are correct, it is unnecessary to consider other questions raised by the appellant, and which are not without force, for it follows that there has been no misapplication of the funds or earnings of the road ; that there has been no diversion of them from any purpose for which they were intended, nor any violation of the contract under which the plaintiffs claim. The complaint, therefore, fails to state a cause of action, and the defendant could not properly be required to answer. It follows that the demurrer was well taken.

The judgment appealed from should be reversed in both courts, the order of the Special Term overruling the demurrer should be reversed, and the defendant have judgment dismissing the complaint, with costs.

All concur.

Ordered accordingly.