## M. H. Reed v. M. G. Sampson et al.

### Decided March 24, 1909.

**1.—Corporation—Forfeiture of Charter.**

A statutory provision that in a certain event a corporation "shall forfeit its charter", or "its charter shall be forfeited", is not self executing, and a judicial establishment of the forfeiture is necessary to terminate the corporate existence.

**2.—Same.**

A corporation created for the purpose of raising, buying and selling live-stock and which had acquired real property for that purpose, failed to enter upon such business during a period of three years after filing its charter, confining its operations to holding and renting out the land so acquired. Held that its corporate existence was not terminated under the provisions of article 681, Rev. Stats., in the absence of a judicial determination of the corporate dissolution; and that a stock holder could not maintain action for partition of the real estate against the other stock holders on the ground that the corporation was dissolved and that they had become joint owners of the property.

**3.—Cases Discussed.**

Galveston, H. & S. A. Railway Co. v. State, 81 Texas, 572, followed. Bywaters v. Paris & G. N. Railway Co., 73 Texas, 624, distinguished.

**4.—Corporation—Dissolution—Amendment of Statute.**

The Act of April 23, 1907, (laws 30th Leg. p. 311) whereby the failure of a corporation to commence active operations within three years was declared of itself to effect a forfeiture of its charter, cannot be construed as a legislative construction of article 681 of the Revised Statutes. The use of words differing from those of the former law was a recognition that an amendment thereof was necessary.

**5.—Statute—Retroactive Effect.**

The Act of April 23, 1907 (Laws 30th Leg. p. 311) declaring a forfeiture of the charter of a corporation failing to commence business within three years is not retroactive, but applies to future omissions alone.

Appeal from the District Court of Travis County. Tried below before Hon. George Calhoun.

*Cochran & Penn,* for appellant.—The West Texas Ranch & Cattle Company, being a private trading corporation, chartered under the laws of the State of Texas, on July 23, A. D. 1900, for the purpose of the raising, buying and selling of live stock, and having failed for three years after filing its charter to commence active operations, was thereby dissolved, and its stockholders became the owners of its property as tenants in common with right of partition. Rev. Stats., art. 681; Bywaters v. Railway Co., 73 Texas, 624; Railway Co. v. State, 81 Texas, 595; Harbor Co. v. Manning, 94 Texas, 558; Baldwin v. Johnson, 95 Texas, 85.

If the dissolution of the said corporation was not complete when the suit was filed, by reason of the fact that the State alone could claim the forfeiture, then we submit that by the Act of April 23, 1907, the State elected to claim the forfeiture as against all corporations which had not commenced active operations within three years after filing their charters with the Secretary of State, and the appellant having amended his petition after this new statute took effect,

and claimed the benefits thereof, the trial court erred in not holding that the dissolution of the West Texas Ranch & Cattle Company was complete at the time the amended petition was filed, and that by reason thereof the plaintiff as a stockholder was entitled to a partition of its lands.

*Gregory, Batts & Brooks* and *Geo. S. Wright,* for appellee.—Article 681 of the Revised Statutes is not self-executing, and the corporation in question continues to exist until the expiration of the time limited in its charter or until dissolved in a direct proceeding brought by the State. Rev. Stats., arts. 680, 681; Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 594-596.

Subdivision 5 of sec. 4 of the Act of April 23, 1907 (p. 311), shows that the Legislature construed article 681 of the Revised Statutes as not self-executing, and this construction is persuasive, if not binding on the courts. Acts of 1907, p. 311; Rich v. Keyser, 54 Pa. St., 89; 26 Am. & Eng. Enc. of Law, 649.

The corporation in question had commenced active operation within the three years. Century Dictionary, p. 1126; Webster's Unabridged Dictionary, under head of "commence;" Fleming Oil & Gas. Co. v. S. P. Oil Co., 17 S. E., 203; Words & Phrases, vol. 2, p. 1281.

Even if art. 681 was self-executing, partition would not be appellant's remedy, but the corporation would have to be wound up in the manner provided by Revised Statutes, art. 682.

The Act of April 23, 1907, even if the Legislature had the power to make past omissions effect a forfeiture of corporate powers without judicial determination, was clearly intended to reach future omissions alone.

RICE, Associate Justice.—Appellant brought this suit against Mrs. M. G. Sampson, a feme sole, Ernest Nalle, Joseph Nalle and W. H. Badger, for the partition of certain lands described in his petition, alleging that plaintiff and defendants were all stockholders in the West Texas Ranch & Cattle Company, a corporation chartered under the laws of this State; the right to so partition being predicated upon the ground that said corporation had failed to commence active operations within three years after filing its charter, whereby it had become dissolved.

All of the defendants, except Mrs. Sampson, made default. She answered by demurrers and exceptions to appellant's petition, and the suit was dismissed on the ground that the petition failed to show a cause of action against her, or any of the defendants.

The said petition specifically alleged that appellees Ernest Nalle and Joseph Nalle, with the other defendants, on the 23d of July, 1900, filed in the office of the Secretary of State a charter under the provisions of title 21 of the Revised Statutes of this State, for the purpose of creating a corporation to be known as the West Texas Ranch & Cattle Company, the object of which, as stated in its charter, was the raising, buying and selling of live stock, and whose authorized capital stock was $43,100, divided into shares of $100 each; said corporation was to continue for a period of fifty years, its principal office

being in Austin, Texas. It was further alleged that all of the incorporators, together with the said Badger, were at the time of filing said charter the owners of all the stock of a Kentucky corporation, which had theretofore obtained a permit to do business in the State of Texas, and had acquired and was then the owner of the land sought to be partitioned, and that said West Texas Ranch & Cattle Company was formed for the purpose of acquiring and holding the lands so owned by said Kentucky corporation, which were taken over at an agreed valuation of $43,100, and that the incorporators of the Texas Company took stock in it in the same proportion as their prior holdings in the Kentucky corporation, and that the stock in the new company was held at the time of trial as follows, to wit: Mrs. M. G. Sampson, 219 shares; Ernest Nalle, 100 shares; Joseph Nalle, one share; M. H. Reed, 110 shares, and that one share had never been issued, but belonged equally to Ernest Nalle and W. H. Badger. It was further alleged that notwithstanding the new company was formed for the purpose of raising, buying and selling live stock, it had not at any time since the filing of its charter been so engaged, but upon the contrary, had simply held its lands and rented the same out from time to time, except that it made sales of a few small parcels thereof. It was further alleged that said company was not indebted.

The appellee Mrs. Sampson challenged the sufficiency of said petition generally and specially on the ground that it did not appear therefrom that the plaintiff and defendants were tenants in common of the land, but it did appear that they were merely the owners of stock in an existing corporation, which owned lands, and were therefore not entitled to partition.

The demurrers of Mrs. Sampson were sustained, and the plaintiff having elected to stand on his petition, the case was dismissed, from which judgment this appeal is prosecuted.

The foregoing statement is substantially taken from appellant's brief.

Appellant challenges the correctness of the judgment of the court below, first, on the ground that it erred in holding that plaintiff's petition showed no cause of action against Mrs. Sampson or any of the other defendants; second, that said court erred in not holding that the facts set out in said petition show that the failure of the West Texas Ranch & Cattle Company to commence active operations within three years after the filing of its charter with the Secretary of State had the effect of dissolving said corporation and of rendering its charter void, and in not holding that by reason of such failure to commence active operations, the property belonging to said corporation devolved upon plaintiff and its other stockholders, as tenants in common, entitling plaintiff to partition as prayed.

Appellant relies upon art. 681, title 21, of the Revised Civil Statutes, as sustaining his contention, which reads as follows: "Every corporation created under this title or any general law of this State, shall commence active operations within three years after filing its charter with the Secretary of State, and in default thereof said corporation shall be dissolved, and its charter become void."

Appellees by their first proposition insist that said provision of the

statute is not self-executing, but that the corporation in question continues to exist until the expiration of the time limited in its charter, or until dissolved in a direct proceeding brought by the State for said purpose. It is confessed by counsel for appellant that they have been unable to find any construction of this statute by our courts. Therefore, the question presented is an open one in this State, but they contend that a somewhat similar provision of the Revised Statutes has been construed in the case of Bywaters v. Railway Co., 73 Texas, 624, and seek to apply the principle therein announced by analogy to the question here involved. In that case it was held that the following language embraced in article 4278 of the Revised Statutes was self-executing, to wit: "If any railway corporation organized under this title shall not, within two years after its articles of association have been filed and recorded as provided by this title, begin the construction of its road, and construct, equip and put in good running order at least ten miles of its proposed road, and if any such railroad corporation, after the first two years from the date of its organization, shall fail to construct, equip and put in good running order at least twenty additional miles of its road each and every succeeding year until the entire completion of its line, such corporation shall, in either of such cases, forfeit its corporate existence, and its powers shall cease as far as it relates to that portion of said road then unfinished and shall be incapable of resumption by any subsequent act of incorporation."

Under this statute it was held that a failure to begin the construction of its road within two years after the filing of its articles of association worked a forfeiture, and thereby, ipso facto, determined its corporate existence, and that said failure on its part was a defense that could be urged by a stockholder to a suit brought by it for the enforcement of an unpaid balance due on his shares of stock. It will be noted that the expression that, upon the failure on the part of the corporation to do the acts therein named, it should "forfeit its corporate existence, and its powers shall cease as far as it relates to that portion of said road then unfinished, and shall be incapable of resumption, etc., by any subsequent act of incorporation," differs materially from the language used in article 681, because the words used in said article 4278, in themselves, *denote a termination of the existence of said corporation for a failure to perform,* while in the present statute it seems only to furnish ground for dissolution in the event of such failure. And from the language used in the said statute, as construed in Bywaters v. Railway, supra, it must have been the intention of the Legislature to make the failure on the part of the company to operate as a limitation to the period of its existence. But the language of the statute now under consideration differs from that construed in the case of Bywaters v. The Railway Co., supra, in that respect, in that it only declares that in the event of default on the part of said corporation in commencing active operations within three years from the filing of its charter, the same shall be dissolved and its charter become void. This language does not indicate to our minds that it was intended to be considered as anything more than a cause for dissolution of the corporation, and that the Legislature

did not intend on account of default on the part of said corporation to thereby, ipso facto, dissolve the same. Article 680 of the Revised Statutes provides that a corporation is dissolved, first, by the expiration of the time limited in its charter; and, second, by a judgment of dissolution rendered by a court of competent jurisdiction.

We are strengthened in this conclusion by the opinion of our Supreme Court in Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 572, wherein it was held, where an Act of the Legislature provided for the forfeiture of the charter of said railroad company in the event it should fail to build to the city of San Antonio by a certain time, that said words provided a ground of forfeiture, but that the manner must be by judicial proceeding instituted directly for that purpose. And while approving the doctrine announced in Bywaters v. The Railway, supra, it held that it had no application to the case then before the court, and distinguished said cases, saying that "We doubt if any case can be found in which the words 'shall forfeit its charter,' or 'its charter shall be forfeited,' have been construed to provide a forfeiture which is to take effect by the mere happening of a contingency. In that connection the term 'forfeit' has been imbued with a technical signification, and is the word universally used in charters for prescribing the grounds upon which a judicial forfeiture may be claimed. This is illustrated by the articles of the Revised Statutes above cited (art. 4278) and art. 4280 in the same chapter. Article 4278 provides that upon the failure of the railways organized under that title to build certain sections of the road as therein provided, the corporation shall 'forfeit its corporate existence and its powers shall cease as far as it relates to that portion of said road then unfinished, and shall be incapable of resumption by any subsequent act of incorporation.' Article 4280 provides that any railway corporation that shall neglect to make its annual report as required by law after being notified by the Comptroller, 'shall forfeit its charter.' The change in the language clearly shows the intention of the Legislature. By the former article it intended to provide a forfeiture without judicial action for a failure to complete so many miles of railway within stated periods. By the latter the intention was to prescribe merely a ground of forfeiture which the State could enforce should it so elect by a direct proceeding in a court of justice."

In discussing this subject, Mr. Cook, in his work on Corporations, vol. 2, 6th ed., sec. 638, says: "Frequently the charter of a railroad corporation requires it to complete its road or a certain number of miles of road within a certain time, when the charter expressly declares that for the failure to comply with this requisite, the corporate powers and existence shall cease. There is a strong line of decisions to the effect that such a provision as this forfeits the charter absolutely upon noncompliance, and that no decree of the court is necessary to effect that forfeiture. But this drastic and dangerous construction of charters does not commend itself to law and justice. It adds one more to the perils which are attached to all great corporate enterprises. Even in New York, where the above doctrine seems to have had its origin, the courts are inclined to limit its application. The New York courts have held that a provision in a charter that unless

certain things are done within a certain time the company shall forfeit the rights acquired, does not work a forfeiture, ipso facto; and that a provision in the charter that unless work shall be commenced within two years 'all rights and privileges granted hereby shall be null and void,' is not self-executing and a judgment of the court is necessary before forfeiture takes place; and the weight of authority, as well as logic and public policy, favor such a rule. It is no defense to condemnation proceedings that the railway company had not commenced work within the time fixed by statute, nor expended the capital required by statute. A statute that after a year's suspension of business, the franchise shall be deemed surrendered and the corporation adjudged dissolved, is not self-executory, but requires the judgment of the court." This text is supported by many authorities of American courts.

In Morawetz on Private Corporations, vol. 2, sec. 1015, it is said: "The charter of a corporation does not expire by reason of the omission or commission of acts on the part of the company constituting sufficient ground for declaring a forfeiture, but the franchises continue in full force until the penalty of forfeiture is claimed by the State granting the franchise, and this can be done only through a proper legal proceeding, by which the cause of forfeiture is judicially ascertained. Thus, it was held by the Court of Appeals of New York that the failure on the part of a railroad company to comply with the provisions of the law requiring the company to build a portion of its road in a certain time would not, of itself, put an end to its legal existence. Earle, J., in delivering the opinion, said: 'These conditions were probably not complied with; they were conditions for the noncompliance with which the sovereign power could claim a forfeiture of the company's charter, but a cause of forfeiture can not be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, and the government creating the corporation can alone institute the proceedings, and it can waive a forfeiture, and this it can do expressly or by legislative acts recognizing the continued existence of the corporation.'"

The same author further says in section 1023: "A charter of incorporation may be granted upon the express condition that the corporation formed under it shall perform some act within a prescribed time after having become incorporated, and a failure to comply with the prescribed condition may cause a cessation of the company's franchise and subject it to a judgment of dissolution. Thus, if the charter of a corporation provides that its capital must be paid in, or that its work must be constructed within a certain time after the time of incorporation, a failure to comply with the prescribed condition will be a sufficient ground for declaring a forfeiture."

In the notes to the case of the State v. Atchison & N. R. Co., 8 Am. St. Reps., 165, may be found an interesting collection of cases supporting the proposition above announced.

In the case of Utah, N. & C. Ry. Co. v. Utah & C. Ry. Co., 110 Fed., 879, wherein a statute of Nevada, somewhat similar to the one under consideration was before the court, it is said: "It is argued

by defendants that because of the failure on behalf of this corporation to do the acts therein required within the time therein specified, its right became ipso facto void; that by the terms of the statute the forfeiture clause was self-operative and became of full force by the lapse of the time mentioned, and that no steps or proceedings on the part of the sovereign power to make it complete or effective were at all essential. There are numerous cases where, upon the particular facts thereof, it has been held that a statute creating a corporation which declares that unless the corporation performs certain acts within a prescribed time, its corporate existence and powers shall cease, or its powers and franchises shall terminate, such statute executes itself. But the fact is that this question is always made dependent upon the special facts, the character of the corporation and the legal construction to be given to the particular statute. The general rule is that the question whether a railroad corporation authorized by the State has forfeited its corporate rights and franchises, can not be raised in any collateral proceeding, and can only be taken advantage of by the sovereign power which created the corporation, because it is its privilege alone to question the right of the corporation to act under its franchise. The State may waive the conditions or enforce them if it sees fit to do so. When the continued life of the corporation is made by the charter or governing statute to depend upon the performance of a condition subsequent, the nonperformance of the condition is not an ipso facto forfeiture, but is a mere ground of forfeiture, of which the State can avail itself, or which it can waive at its pleasure. So that unless the State takes advantage of the ground of forfeiture in a proceeding by quo warranto or otherwise to oust the corporation of its franchise, the existence of the corporation upon such a ground can not be collaterally called in question. The Supreme Court of the United States has uniformly held, in construing various Acts of Congress containing similar provisions to the Act of 1875, that the failure to complete the road within the time limited is treated as a condition subsequent, not operating, ipso facto, as a revocation of the grant, but as authorizing the government itself to take advantage of it and forfeit the grant by judicial proceeding or by an Act of Congress resuming title to the lands."

In the case of Bybee v. Oregon & Calif. R. Co., 139 U. S., 663, will be found a full discussion of the doctrine under consideration, and which supports the views here announced; and in this case, the court in discussing the New York cases which seem to hold a contrary doctrine to the view above expressed, said: "In these cases the legislative Act did not avoid the grant upon the nonperformance of the condition subsequent, but declared that the corporate existence and powers of the company to act were at an end. In other words, it fixed a time for the expiration of the charter, and when that time arrived the corporation lost its power to act or to do any business beyond such as was necessary in the process of winding up. It is not so much a cause of forfeiture as a loss of legal entity; or, as expressed in the language of the Court of Appeals in the case from 78 N. Y., 524, 'In case of noncompliance, the act itself ceases to have any operation, and all the powers, rights and franchises thereby

granted were deemed forfeited. There was to be not merely a cause of forfeiture which could be enforced by an action instituted by the Attorney-General, but the powers, rights and franchises were to be taken and treated as forfeited and determined. At the end of the time limited the corporation was to come to an end, as if that were the time limited in its charter for its corporate existence.' More directly in point is the case of Oakland Railroad Company v. Oakland, B. & F. U. R. Co., 45 Cal., 365. In this case an Act of the Legislature granting a corporation the right of way to lay a street railroad track, provided 'that if the provisions of this Act are not complied with, then the franchises and privileges herein granted shall utterly cease and be forfeited.' A breach of this condition was held, ipso facto, to forfeit the franchises of the corporation. A distinction is drawn in this case between forfeiture at common law, which did not operate to divest the title of the owner until, by proper judgment in a suit instituted for that purpose, the rights of the State had been established and a forfeiture declared by statute, in which case the title to the thing forfeited vests immediately in the State upon the happening of the event for which the forfeiture is declared. The doctrine of these cases has not been universally accepted, however, and in several States, notably Massachusetts, it has been distinctly repudiated. Thus, in Briggs v. Cape C. S. Canal Co., 137 Mass., 71, the act of incorporation of a canal company provided that if a certain amount were not expended in the actual construction of the canal within four months from the passage of the Act, the 'corporation shall thereupon cease to exist;' and further, that if a certain other amount were not deposited by the company with the treasurer of the Commonwealth within the same time, the corporation should thereupon cease to exist. It was declared in the opinion of the court to be 'too well settled to admit of discussion that a corporation can be judicially determined to have ceased to exist only in a suit to which the Commonwealth is a party. The act of incorporation is a contract between the Commonwealth and the corporation. Whether the corporation has complied with the conditions is a question of fact to be judicially determined. The Commonwealth may waive a strict compliance with the terms of the Act, and may elect whether it will insist upon a forfeiture, if there has been a breach of condition.' "

In the case of City Council of Spartanburg v. Spartanburg, C. & G. R. Co., 51 S. C., 129, it is held that a corporation is not ipso facto dissolved by an act of nonuse or misuse, which is a cause of forfeiture; but in such case the forfeiture of its corporate franchise must be judicially determined.

In the case of New York & L. I. Bridge Co. v. Smith, 148 N. Y., 540, it is said that the question of whether a forfeiture clause in an act of incorporation is or is not self-executing, depends wholly on the language employed by the Legislature, but that "it requires strong and unmistakable language to authorize the courts to hold that the Legislature intended that the forfeiture of a corporate existence should be effected without judicial proceedings on the intervention of the Attorney-General."

See the following cases in support of the same doctrine: Morrison v. Forman, 177 Ill., 427; Day v. Ogdensburgh & L. C. R. Co., 107 N. Y., 129; Brown v. Wyandotte & S. E. Ry. Co., 68 Ark., 134.

Appellee suggests that this construction was acquiesced in by the Legislature, because by the Act of April 23, 1907, sec. 4, page 311, they made certain changes in articles 680 and 681, and instead of providing two methods of dissolving a corporation, as theretofore existed, four others were added, and in lieu of article 681, it substituted subdivision 5, reading as follows: "Where a corporation created under title 21, or a general law of this State, shall fail to commence active operations within three years after filing its charter with the Secretary of State, its charter is hereby forfeited and it is hereby dissolved." By contrasting the two provisions it clearly appears that the Legislature intended to make the failure to commence active operations within three years, of itself, effect a forfeiture, and apt words were used to declare such purpose; and since no judicial construction has been given to this article, this legislative construction is highly persuasive. In Rich v. Keyser, 54 Pa. St., 89, it was held that the fact that words in a statute differ from those in a prior statute on the same subject is an intimation that they are to have a *different and not the same* construction. So it would seem that the Legislature, by the change in the statute, recognized that the same was not self-executing, but by its amendment made it so, and must have deemed said amendment as necessary for the accomplishment of said purpose.

We therefore, from a review of these cases and the doctrine established by them, conclude that the language used in article 681 of the Revised Statutes and relied upon by appellant, was a condition subsequent and was only a ground for the forfeiture, but was not self-executing, and did not, on account of the failure of said corporation to commence active operations within a period of three years, ipso facto, dissolve the same, but that a judicial determination of such failure must be had in order to have that effect, and therefore the demurrer was properly sustained.

Appellant in this case pleaded that the Act of April 23, 1907, which provided for additional grounds of forfeiture, and which used language which would seem to imply that a failure to commence business within a period of three years would, ipso facto, forfeit the charter of such corporation. With reference to this Act we are inclined to believe that the same must be construed to reach future omission alone, and can not be relied upon as a basis for forfeiture for past omissions on the part of the company.

Believing that no error has been shown in the proceedings of the court below, its judgment is affirmed.

*Affirmed.*

Associate Justice Key did not sit in this case.

Writ of error refused.